UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Atlantic Coast Creations, Ltd., individually and on behalf of all others similarly situated**, <br><br> **Plaintiff,** <br><br> v. <br><br> **W.B. Mason Co., Inc.** <br><br> **Defendant.** | **Class Action Complaint** <br><br> C.A. NO. _____ |

Atlantic Coast Creations, Ltd. (hereafter also referred to as "Plaintiff") brings this lawsuit against W.B. Mason Co., Inc. (hereafter also referred to as "Defendant"), based upon personal knowledge related to itself, and upon information and belief obtained in part from an investigation conducted by its attorneys, as to all other matters, as follows:

1. In late 2019, the press began reporting that a novel coronavirus (hereafter also referred to as "COVID-19") was detected in the Wuhan Province of the People's Republic of China.

2. COVID-19, which has become a world pandemic, causes a broad spectrum of symptoms, including but not limited to one or more of the following: shortness of breath, cough, chills, fever, body aches, general fatigue, sore throat, loss of taste, and loss of smell.

3. The Centers for Disease Control has issued guidance that recommends face coverings to prevent a person from contracting the coronavirus, which spreads through respiratory droplets that enter through an individual's nose and mouth.

1

4. The coronavirus not only can severely sicken individuals but can even lead to death

5. The COVID-19 virus pandemic has created an enormous demand for respirator products, also commonly referred to as masks, to protect consumers from inhaling harmful and deadly COVID-19 airborne hazardous biological pathogens.

6. Plaintiff brings this putative class action lawsuit on behalf of itself and a putative nationwide class of similarly situated entity consumers and individual consumers (hereafter also referred to as "Class") who have purchased Defendant's respirator product.

7. 3M is a leading manufacturer of N95 respirator products in the United States. 3M's respirators are well known by consumers, highly sought after by consumers, and considered the "gold standard" for protection against pathogens. *See, e.g.,* https://www.startribune.com/3m-s-efforts-on-counterfeit-n95-mask-crackdown-leads-to-raids-in-vietnam-u-a-e/572638472/ (last visited February 16, 2021).

8. 3M produces an N95 model 1860 respirator product (hereafter also referred to as a "Genuine Mask"), which filters out 95 percent of harmful pathogens and can be a life-saving product for use in the current COVID-19 pandemic.

9. Defendant has deceptively labeled, marketed, and misleadingly sold a counterfeit N95, 3M model number 1860, respirator product (hereafter also referred to as a "Counterfeit Mask") whose origin is not from 3M.

10. Defendant has misused the 3M trademark on the Counterfeit Masks' packaging to deceive and mislead consumers by trading on the goodwill of a reputable manufacturer that manufactures and sells the Genuine Mask.

11. Defendant has misled Plaintiff, individual consumers, and consuming entities (hereafter collectively referred to as "Consumers") to believe that the Counterfeit Mask is a Genuine Mask.

12. Plaintiff and the Class purchased Defendant's Product on the reasonable, but the mistaken, belief that the Product was a Genuine 3M Mask.

13. Defendant's actions have exploited the current health emergency created by the COVID-19 pandemic by preying upon unsuspecting Consumers who have been deceived, defrauded, and misled into purchasing Defendant's Counterfeit Masks.

14. Defendant has taken advantage of the unusually high demand for respirator products by selling them at inflated prices.

15. Defendant's actions have potentially created a health and safety issue that has put Consumers at risk of severe and life-threatening outcomes from the use of the Counterfeit Masks that may not live up to 95 percent filtration rate.

16. Consumers were not aware of the Counterfeit Mask's true origin and relied upon Defendant's Counterfeit Mask to protect them from the dangerous and potentially deadly COVID-19.

17. The origins of Defendant's Counterfeit Masks are entirely unknown, and Consumers cannot determine their efficacy without detailed, sophisticated, and expensive testing.

18. Defendant intends that Consumers rely upon the Product's labeling, and reasonable consumers, do in fact, rely on the Product's labeling.

19. Plaintiff and the Class relied on Defendant's Counterfeit Masks to protect them from the dangers of the potentially deadly COVID-19 virus.

20. Plaintiff seeks redress for Defendant's unlawful, deceptive, fraudulent, unfair, and unjust labeling, marketing, and selling at grossly inflated prices, its Counterfeit Masks.

21. Plaintiff seeks damages, injunctive relief, and a jury trial for Defendant's unlawful, deceptive, fraudulent, unfair, and misleading actions that provide the basis for Plaintiff's unjust enrichment claim.

## PARTIES

22. Plaintiff is currently, and has been throughout the Class Period, a Rhode Island corporation with its principal place of business in Central Falls, Rhode Island. During the Class Period, Plaintiff purchased Defendant's Product on several occasions from Defendant.

23. Defendant is a Massachusetts corporation headquartered in Brockton, Massachusetts.

## JURISDICTION AND VENUE

24. Jurisdiction of this Court is proper under 28 U.S.C. §1332(d)(2). Diversity jurisdiction exists as Defendant is a Massachusetts corporation with a principal place of business in Massachusetts Plaintiff is a Rhode Island corporation with its principal place of business in Rhode Island. The amount in controversy exceeds $5,000,000 for Plaintiff and the Class, exclusive of interest and costs, reaped by Defendant from their transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by the injunctive and equitable relief sought.

25.     Jurisdiction is proper according to the Class Action Fairness Act of 2005 (hereafter also referred to as "CAFA").  28 U.S.C. § 1332(d)(2).

26.     Venue is proper within this judicial district under 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred in this judicial district.

## PRODUCT LABEL

27.     Exhibit "A" is a true and accurate image of a package that contains twenty (20) Counterfeit Masks that: (1) bears a circular silver reflective seal on the package's top label that displays "3M PERU S.A.;" (2) bears the distinctive 3M trademark; and (3) bears the lot number B20018.

28.     Plaintiff purchased the package identified in Exhibit "A" for a price of One Hundred Seventy-Five Dollars ($ 175.00), which calculates to six dollars and seventy-five cents ($ 8.75) per mask.

29.     Exhibit "B" is a true and accurate image of a package that contains twenty (20) Counterfeit Masks that: (1) bears a circular silver reflective seal on the package's top label that displays: "3M MN, USA.;" (2) bears the distinctive 3M trademark; and (3) bears the lot number B20021.

30.     Plaintiff purchased the package identified in Exhibit "B" for a price of One Hundred Seventy-Five Dollars ($ 175.00), which calculates to six dollars and seventy-five cents ($ 8.75) per mask.

31.     3M has posted a counterfeit notification letter on its website. See https://multimedia.3m.com/mws/media/1934748O/3m-counterfeit-communication-letter.pdf (last visited February 16, 2021).

32.     Exhibit "C" displays a portion of 3M's counterfeit notification letter relating to the model number 1860 respirator product, which explains what images to look for on the packaging to determine if the respirator product is counterfeit.

33.     3M directs attention to specific images on the respirator product's packaging that contain a circular silver reflective label displaying "3M PERU S.A." on the top panel of the packaging, indicating that the respirator product is counterfeit.

34.     Exhibit "A," which is a true and accurate image of one of the respirator products that Plaintiff purchased, contains a circular silver reflective label displaying "3M PERU S.A." on the top panel of the packaging, which evidences the fact that Plaintiff has purchased Counterfeit Masks.

35.     Exhibit "B," which is a true and accurate image of one of the respirator products that Plaintiff purchased, contains a circular silver reflective label displaying "3M MN, USA" on the top panel of the packaging, which evidences the fact that Plaintiff has purchased Counterfeit Masks.

36.     Exhibit "D" displays a portion of 3M's counterfeit notification letter relating to the model number 1860 respirator product, which explains what lot numbers to look for on the packaging to determine if the respirator product is counterfeit.

37.     3M directs attention to lot number B20018 on the respirator product's packaging, indicating that it is counterfeit.

38. Exhibit "A," which is a true and accurate image of one of the respirator products that Plaintiff purchased, contains lot number B20018, which evidences the fact that Plaintiff has purchased Counterfeit Masks.

39. 3M directs attention to lot number B20021 on the respirator product's packaging, indicating that it is counterfeit.

40. Exhibit "B," which is a true and accurate image of one of the respirator products that Plaintiff purchased, contains lot number B20021, which evidences the fact that Plaintiff has purchased Counterfeit Masks.

41. The 3M counterfeit notification letter confirms that the images and the lot numbers depicted on Exhibit "A" and Exhibit "B" are the images and lot numbers of Counterfeit Masks that Defendant has unlawfully sold to Consumers.

42. 3M has posted a listing of its "U.S. List Prices for Common N95 Respirator Models."  See https://multimedia.3m.com/mws/media/1862179O/get-the-facts-n95-respirator-pricing.pdf. (last visited February 16, 2021).

43. Exhibit "E" is a portion of 3M's display of its list prices for common N95 respirator products, which indicates that the list price of its Genuine Mask (Model 1860) is one dollar and twenty-seven cents ($ 1.27).

44. Plaintiff paid Defendant eight dollars and seventy-five cents ($ 8.75) for each Counterfeit Mask.

45. 3M's indicates that its list price for each Genuine Mask is one dollar twenty-seven cents ($ 1.27).

46.     Plaintiff purchased each Counterfeit Mask from Defendant for five hundred eighty-nine percent (589%) greater than, or almost six (6) times greater than, 3M's list price for each Genuine Mask.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on behalf of himself and all other Consumers who purchased Defendant's Product. Plaintiff brings this class action lawsuit pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3). Excluded from the Class are Defendant and its employees, principals, affiliated entities, legal representatives, successors, and assigns.

48.     Upon information and belief, thousands of Class members are geographically dispersed throughout the United States. Therefore, individual joinder of all members of the Class would be impracticable.

49.     Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual class members. These common legal or factual questions include: (1) whether Defendant's labeling of its Product is likely to deceive Class members; (2) whether Defendant's representations are unlawful; and (3) the appropriate measure of damages and restitution.

50.     Plaintiff's claims are typical of the Class's claims in that Plaintiff is a consumer who purchased Defendant's Product.

51.     Plaintiff is an adequate representative of the Class because its interests do not conflict with the Class members' interests it seeks to represent. Plaintiff has retained counsel

competent and experienced counsel in conducting complex class action litigation. Plaintiff and its counsel will adequately protect the interests of the Class.

52. A class action is superior to other available means for this dispute's fair and efficient adjudication. The damages suffered by each individual Class member and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct would be virtually impossible for Class members individually to effectively redress the wrongs done to them.

53. Moreover, even if Class members could afford individual actions, it would still not be preferable to classwide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

54. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief for the Class.

**COUNT I**
**(Unjust Enrichment)**

55. Plaintiff alleges and incorporates by reference the allegations in all of this Complaint's preceding paragraphs as though fully set forth therein.

56. As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched. Expressly, by its misconduct described herein, Defendant has accepted a benefit in the form of monies paid by Plaintiff and the Class. The

defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Class.

57. It would be inequitable for Defendant to retain the profits, benefits, compensation, consideration, and other monies obtained by and from its wrongful conduct in promoting, marketing, distributing, and selling the Product. On behalf of himself and all others similarly situated, Plaintiff seeks restitution from Defendant an order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

a. Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and his counsel as Class Counsel;

b. Actual damages;

c. Restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Class as permitted by applicable law;

d. Statutory pre-judgment and post-judgment interest on any amounts;

e. Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

f. Such other relief as the Court may deem just and proper.

Dated: February 18, 2021

/s/ John T. Longo
John T. Longo, Esq. MA BBO 632387
Law Office of John T. Longo
177 Huntington Avenue, 17th Fl, Suite 5
Boston, MA 02115
Tel: (617) 863-7550
jtlongo@jtlongolaw.com

Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
(RI Bar No. 3351)
1307 Chalkstone Avenue
Providence, RI 02908
Tel: (401) 831-7730
Fax (401) 861-6064
Email: pnwlaw@aol.com
(Pending Pro Hac Vice Motion)

# Exhibit "A"







# Exhibit "B"







# Exhibit "C"



**COUNTERFEIT NOTIFICATION – NOT A PRODUCT RECALL**

February 11, 2021

Dear Valued Customer,

Recently, we have been receiving increasing reports of fraud related to the following three 3M surgical respirator models:

- 3M™ Health Care Particulate Respirator and Surgical Mask 1860;
- 3M™ Health Care Particulate Respirator and Surgical Mask 1860S; and
- 3M™ Aura™ Health Care Particulate Respirator and Surgical Mask 1870+.

These have included reports of fake/counterfeit product as well as fraudulent offers where product is offered but not delivered. We have been working with law enforcement to get counterfeit respirators off the market. These enforcement actions have resulted in the seizure of millions of counterfeit model 1860, 1860S, and 1870+ surgical respirators.



In evaluating offers for these respirators, please consider some common signs of counterfeit:

- All 3M model 1860, 1860S, and 1870+ respirators imported into the United States from any other country are likely to be counterfeit. 3M is not currently importing these respirator models into the United States. If you have been offered these models coming from outside the United States, they should be viewed as counterfeit.
- All 3M model 1860, 1860S, and 1870+ respirators exported from China/Hong Kong should be viewed as counterfeit. We do not manufacture these respirators in China/Hong Kong.
- Do not rely on TUV, SGS, or similar certification reports. All shipments of 3M model 1860, 1860S, and 1870+ respirators accompanied by a TUV, SGS, or similar certification report are likely counterfeit.
- 3M does not use a "Peru Seal" or other similar seals (examples at right). Respirators bearing these seals are likely counterfeit.




# Exhibit "D"

## U.S. List Prices for Common N95 Respirator Models

These list prices are per respirator.

These list prices represent suggested prices to end customers. 3M's prices to its authorized distributors are lower than these list prices.

An end customer's actual prices may be lower than these list prices, as negotiated between the end customer and its chosen distributor.

List prices for these models sold in Canada are similar on a currency-adjusted basis.

| Model | Type | List Price (USD) |
|---|---|---|
| 1804 | Surgical | $0.68 |
| 1804S | Surgical | $0.68 |
| 1860 | Surgical | $1.27 |
| 1860S | Surgical | $1.27 |
| 1870+ | Surgical | $1.78 |
| 8210 | Standard | $1.02 - $1.31 |
| 8210Plus | Standard | $1.18 - $1.50 |
| 8210V | Standard | $1.48 - $1.88 |
| 8110S | Standard | $1.08 - $1.37 |
| 8200 | Standard | $0.63 - $0.80 |
| 8511 | Standard | $2.45 - $3.11 |
| 9105 | Standard | $0.64 - $0.81 |
| 9105S | Standard | $0.64 - $0.81 |
| 9210+ | Standard | $1.40 - $1.78 |
| 9211+ | Standard | $2.68 - $3.40 |

# Exhibit "E"

With regard to model 1860, 1860S, and 1870+ surgical respirators, we have identified counterfeit product bearing the following Lot Codes:

| | Lot Codes |
|---|---|
| Model 1860 | B19029, B19063, B19206, B19240, B19130, B19133, B19155, B19161, B19206, B19314, B20010, B20013, B20016, B20018, B20020, B20021, B20022, B20025, B20060, B20119, B20235, B20245, B20281, B20670 R20025, R20102, R20144, R20150, R20183, R20190, R20294, R20328 |
| Model 1860S | B20020, B20522, B20659, B20670, B20679, R20522 |
| Model 1870+ | C193041, C190241 |



Please note that there may be counterfeit product with Lot Codes not listed here, and that additional Lot Codes may be added over time.

If you possess respirators bearing one of these Lot Codes, please immediately assess the way in which you acquired those products. If you purchased them from a seller that is not a 3M authorized distributor, then there is a significant risk that

they are counterfeit and should not be used. We strongly recommend that 3M respirators be purchased only through 3M authorized distributors, or through existing contracting vehicles (i.e., Federal Supply Schedules), as this will provide the greatest assurance of receiving authentic product.